May it please the Court, Kara Hartzler for the Petitioner Josue Herrera. The Arizona Threatening and Intimidating Statute at issue here is not a crime involving moral turpitude or a CIMT for two reasons. First, it lacks the necessary mens rea to be a CIMT. Second, even if it did have the necessary mens rea, it would still reach conduct that does not qualify as inherently base, vile, or depraved. Let's go to your first point. Yes. Argue that. Tell us why you think that's the case. I think the easiest way to argue this point, Your Honor, is to look at the general Arizona legislative statutory scheme as a whole. There are at least five other provisions that relate to gang-related statutes that specifically use the word intent. In this statute at issue in our case, the Arizona legislature did not use the word intent. And there is very strong Supreme Court law that when the legislature chooses to use a word in one section and chooses not to use it in the other section, that needs to be taken as a deliberate move by the legislature. But what words did it use? It used the words, in order to promote, further, or assist the interests of a gang. That strikes me very much as the equivalent of intent, and it also strikes me as involving a mens rea of the kind that we're looking for in this situation. I think that's putting words in the mouth of the Arizona legislature, and I think it's violating common principles, fundamental principles of statutory interpretation. I would also point to the fact that specifically the word assist has been interpreted in other Arizona cases to mean mere association, which doesn't necessarily require an intentional mens rea. So even if you would say that perhaps in order to promote, even if you would say that that maybe sounds like an intentional mens rea, the statute also needs to promote. Robertson, what else could it mean, in order to promote? What else could it mean? I'm not sure, Your Honor, but the fact is that we have to, as you have to as a court, look to the least of the acts criminalized. And here, if you look at assist, which would conceivably be the least of the acts criminalized, that can be violated by mere association, which does not require an intentional mens rea. I would also point to the fact that even if this Court says, well, we believe that this is an intentional mens rea, then it still would not necessarily be a CIMT. So even if you disagree with my first point, I would also point out that in cases where there is an intentional mens rea, this Court has very firmly held that it must be proven that the statute requires either an intent to harm, actual harm, or a protected class. And, in fact, that rationale is laid out very well by this Court in decision only this last year in Castrijon-Garcia. Castrijon goes through and makes a very comprehensive analysis of how we look at this thorny issue of when is something, a crime involving moral turpitude. And what it returns to over and over is this idea of even if you have an intentional mens rea, it has to have intent to harm, actual harm, or a protected class. Now, under both Arizona case law and under the rationale put forth in Castrijon-Garcia, the Arizona statute lacks that. It doesn't require an intent to harm under the Arizona decision in In re Kyle. It doesn't require actual harm pursuant to In re Kyle or In re Ryan, I believe. And, therefore, there's just no way to find that even if this statute did have an intentional mens rea, it would be a CIMT. And I would also point out that in terms of those three factors, the government has never argued or disputed that the Arizona statute lacks those. And for that reason, we would put forth that the statute is not, cannot be a CIMT. Sotomayor, don't you have to show actual cases where the statute has been applied to non-morally turpitudinous conduct? Yeah, absolutely. And that would be the realistic probability test. So, first of all, we would step back a moment and say the realistic probability test does not, in fact, apply if the specific terms of the Arizona statute, are broader than the generic offense. And that was this Court's en banc decision in Griselle. So, first of all, we would put forth that perhaps the realistic probability test doesn't even apply in this case. But assuming that it does, I would point to this Court's or, I'm sorry, the Arizona decision in State v. Hernandez, which was essentially a case where a person went over to a rival gang's territory, jumped out of the car, and said, who wants to box? That sort of behavior is the type of puffery, what we would colloquially refer to as trash talk, that just simply doesn't require any intent to carry through on the threat, any intent to harm, or any sort of protected class. So even if the Court finds that there's a realistic probability that Griselle does not apply and we have to point to a specific case, Hernandez is that case. I would also point to the Arizona Court's decision in, I believe it's Clifton, which described, it's a slightly different statute, but it described what's necessary for a conviction for assisting under, assisting a criminal street gang. And in that case, what the Court said is that all you need is that mere association, as I mentioned before. So for those reasons, we would say that we don't need to meet the realistic probability test because the terms of the statute are broader, but even if we did, we've met it with at least two cases. Kagan in Hernandez, though, immediately after the defendant held Letts' box, gunfire erupted between the rivals. So, I mean, doesn't that make a difference? I would point out, Your Honor, that there were the defendant was convicted for separate offenses for that. He was convicted of aggravated assault. So the any sort of intent, if it could be implied that there is an intent, would have gone with the separate offense that he was convicted of. And there's no way to assume that at the time that he made that statement, who wants to box, that he necessarily had the intent. We just can't look to anything more than at least to the acts criminalized by the statute, which is what the Supreme Court recently reminded us in Moncrief. And if you're on reserve. Yes. Thank you, Your Honor. May it please the Court. My name is Elizabeth Kerlin, and I represent the United States Attorney General who is the Respondent in this case. Your Honors, the Board correctly determined that the crime of threatening or intimidating in order to promote, further, or assist a criminal street gang under 13-1202a3 categorically defines a crime involving moral turpitude, because it involves a purposeful or deliberate threat made for the condemnable reason of promoting violent street gangs. Petitioner who was arrested and ultimately convicted of this crime only four months after being granted permanent residence during removal proceedings for a prior drug conviction has not established a realistic probability that Arizona does not interpret the gang-related provision of a3 to require the necessary mens re of a purposeful threat that satisfies the deliberate intent requirement. Are there any cases out of Arizona that you would cite that prove your point? Yes, Your Honor. What we would cite to is actually the only published Arizona decision to deal with this particular subsection, which is Corona. And in that case, the Court set out that, according to Corona, the generic elements of a3 concern, number one, whether the defendant made any threat, number two, whether he invoked the name of his gang, and, three, if he did so, for what purpose. And ---- How does that get you to mens re of? It gets us to the mens re because the particular subsection contains the words, to cause physical injury or damage of another in order to promote further or assist. Now, Petitioner has stated that the assist word is somehow indicative of the lack of intent. That is not the case because the way that the Arizona legislature wrote the statute is to provide for the intent to come before the actions, or the verb in this case, which is further, promote, or assist. Those are verbs. And the in order to is the intent. And similar to the statute that he has pointed to, another criminal ---- another criminal gang statute, it provides for the intent to come before those actions. So ---- The piece that gives me pause is not an a3 case, but it's an a1 case, which is Conrad Kyle M, where basically the Arizona courts say, you know, you don't have to prove intent. And I see ---- I'm not sure I see a difference between a1 and a3 on that. I mean, and my guess is that Arizona's position is that it's a strict liability crime. If you ask the Attorney General from Arizona, my guess is that would be his response. Your Honor, the reason why that is not so, actually, is that as the Board recognized in this case, there are two types of intent that are at play in this statute. The first is under a1 or a2, which, as the Board acknowledged, involves the negligence aspect of it. And the ---- but the second, which the Board recognized and discussed, is that the second, the addition of that phrase, in order to promote further or assist, adds the requisite purposeful or deliberate intent. And the way that we can see that the ---- that that is the intent of the legislature is to look at how the Arizona courts have applied it. And in the most recent decision, which was cited by Petitioner, Shivers, the court looked at a ---- the defendant in that case was actually charged under a3 in a private ---- in the context of a private fact that he was a gang member and he made the threat, but he made the threat to augment or to put additional fear in his victim. So the fact that ---- I understand your argument, but here we are sitting without any precise case guidance. And the net result of your argument might be to add to the State's burden of proof on a State crime. At least that would be cited for that proposition. Under other circumstances, I'd say let's certify, but this doesn't seem to be charged very much in Arizona. Well, my response to that would be, Your Honor, that taking a step back, we're looking at here what Petitioner is ---- has the burden of proving is showing that there's a realistic probability. And if what Petitioner is saying is that there's a realistic probability that an individual can be committed of this crime without ---- with lacking the requisite intent, then I would point, again, to what the Arizona courts have and how they have applied that. That's the surest way, as the Supreme Court in Duenez-Alvarez said, is to see if this ---- there is that intent there. Is ---- has the Arizona-led courts applied it in that way? And it would appear that the Arizona courts have never applied it to be a strict liability crime, because a person cannot be convicted under ---- under A3 for doing something in order to promote further or assist their gang unless there is proof of that beyond a reasonable doubt. Otherwise, they are found guilty under A1 or A2 in using the B2 class of the subsection B2, which is we discussed in our brief, which is ---- requires showing that the individual is a gang member. That ---- so that takes it away from the idea that we are placing a burden. We're merely pointing to the way that the courts have interpreted this, and the way that they've interpreted it has always been to require an intent. In the cases assigned by the Petitioner, can we carve out the threatening or intimidating language and not take into consideration the surrounding circumstances? I'm sorry, Your Honor. I ---- I mean, the cases, because the ---- Mr. Herrera has to show actual cases, and I'm just wondering, can we carve out the threatening or intimidating language and not take into consideration the surrounding circumstances? Are the threats vile, sufficiently vile or based and depraved? Okay. So that ---- I think Your Honor's question brings me to the second part of our argument, which is that the Board in this case recognized that in its analysis what it actually said was that it looked at what your concern. It said what makes the offense reprehensible is the fact that it encompasses only that subset of threats made for the specific purpose of promoting gang activity or organized crime. So in other words, an objectively threatening statement may or may not be reprehensible in isolation, but if you take it and you ---- it takes on a clearly condemnable character when it's being done to promote the antisocial activities of street gangs or other organized crime. And in this case, that is what is squarely at issue, is that this ---- the ---- as Shivers even recognizes, the ---- Arizona is free to ---- to ---- has a compelling interest and a legitimate State interest in preventing individuals from taking actions to promote gangs, which the activities of gangs are antisocial, and they've ---- they're not legal in any sense. They involve murder, mayhem, heinous crimes. And so an individual who's taking any action to further promote or assist the gang in any way is engaging, is forwarding the ---- the plan or the ---- what the gang wants, which is antisocial. And so going back to your question, yes, that's what the board recognizes, that it satisfies the morally torpitudinous character of the crime because of that. Kagan. Do they have ---- do you agree with Ms. Hartzler that they ---- that the threat has to include an intent to harm or actual harm? The ---- yes. And if so, let's box. How ---- where do you derive the intent to harm or actual harm there? Your Honor, that ---- those cases that have ---- that have dealt with this subsection, those cases, those individuals, they may have made a certain threat in terms of saying things like that, but then the circumstances of what have happened in addition to that include the individual who said, let's box, but then they engaged in ---- in further crimes, and the individual who in ---- in ---- But that's my point here, because Ms. Hartzler came up and said, well, that harm was related to the other crime that they got convicted of, and so we have to carve out this threat and see if there was, I guess, a separate harm. I'm just trying to figure out, is that what we're supposed to do, and if so, what's the authority? Well, the carving out, I think that's kind of confusing the issue, because when we're looking at this, we're looking at whether the legislature has ---- has applied it in situations that are morally turpitude-ness. And if we look at that, we'll ---- the individual is usually charged under several crimes. And so this ---- that threat, sure, it could be ---- it's morally turpitude-ness if it was found to be done in order to promote the gang, and then they include other actions. But aren't you arguing then for a modified categorical approach? Because these cases seem to be pretty circumstance-dependent. Your Honor ---- If you start getting ---- parsing it out that closely, then it seems to me then you don't have a categorical approach that's appropriate anymore. No, Your Honor. This is exclusively a categorical analysis. That's why I was kind of ---- I was ---- my focus was on the language of the statute itself and on how it's been applied. And as far as my readings of the Arizona cases, it appears that they have applied it to ---- to ---- and I was just describing the situations in which they've ---- they've applied a conviction under this statute. I see that my time is out. May I close? I had one more question, though. I'm sorry to delay you. But looking at the statutory definition of street gang or criminal street gang and criminal street gang member, isn't there a reasonable possibility that the statute will be applied to people who are not in established gangs? Well, our position has been, Your Honor, that gang membership is not an element of ---- does not appear to be an element. It could ---- maybe it insists the court in ---- the only time it's ever been an issue is when a defendant appears to challenge it, who may have been convicted under the lesser included offense because he was a criminal gang member, has put his gang membership at issue by raising a constitutional challenge to it. But otherwise, this subsection, under Corona, does not appear to necessarily matter whether the individual is a member, as long as what the state has to prove is that they've done the threat or intimidation in order to promote the gang. So in closing, I'd like to just say that, therefore, the crime of threatening or intimidating in order to promote a criminal street gang under Arizona law categorically defines a crime involving moral turpitude. Thank you, counsel. Ms. Rebuttal. I'd just like to step back for a moment and look at a slightly bigger picture in that we're dealing with the idea of a crime involving moral turpitude, which is the epitome of this very vague, slippery concept that this Court has in many cases had a hard time, understandably, applying. And then we're adding that to what I think both parties would agree is somewhat confusing case law in terms of your question, Judge Moria, about how do we look at the circumstances. And I think all of that comes together to lead us to the conclusion that there's just not enough here to show that the Arizona legislature, first of all, requires an intentional mens rea, which would be necessary, and, second of all, that the statute requires any sort of intent to harm, actual harm, or a protected class. And I think this goes to your question, Judge Thomas, in terms of what is the mens rea? Can you have several mens reas within the same statute? If A-1 actually does require a mens rea of negligence or perhaps even strict liability, then can that actually be changed halfway through the statutory text by a different mens rea, as the government seems to be arguing? And I don't think it can. I think it's a situation where you really have to say the Arizona legislature did not use the word intentional, even though it clearly knew how to do so. And then even if you find that they did mean to use the word intentional, the government has never claimed and never been able to claim that the statute nevertheless requires actual intent or actual harm. Robertson, What does in order to promote mean if it doesn't mean something that's done intentionally? In order to promote. What could it possibly mean other than something done with the intent to? Well, first of all, Your Honor, I would point that in order to promote is only part of the statute. It's in order to promote further or assist. So even assuming that you could say in order to promote does require an intentional mens rea, that's still not the entire statute. The statute in your case. I understand that, but it seems to me that it's absolutely the equivalent of with the intent to promote. I think that even if you would say intent to promote equals intentional, then the statute is divisible because intent to assist does not require an intentional mens rea. So at best, we have a divisible statute, and there's nothing here. I'm not sure I'm following your argument. Intent to assist doesn't involve the mens rea? I'm sorry. In order to assist. I apologize. It doesn't involve a mens rea? I don't believe so, Your Honor. Why not? Because I don't believe we can put words in the mouth of the Arizona legislature. How do you get to the – when you add assist, what does that take away from the previous words? Well, Your Honor, I would point out that, you know, in – assist has been – has been defined by the Arizona courts to only require association. So in order to associate, I had the intent to associate with this person. That doesn't necessarily mean that I had the intent to promote this or have this specific intent to do this activity. If it's with the intent to assist, would that be – if the Arizona court had – if the legislature had said with the intent to assist, would that eviscerate your argument that you just made? I think it would eviscerate the part that says that the statute doesn't have an intentional mens rea, but even if you show that, then you still have to prove intent to harm or actual harm. And they haven't been able to do that here. Thank you, Your Honor. Thank you, counsel. I thank you both for your arguments today. The case just heard will be submitted for decision.
judges: Trott, Thomas, Murguia